UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:23-CV-00551-CRS-RSE

**DAWN H.**                                                                                         **PLAINTIFF**

VS.

**MARTIN O'MALLEY**                                                                        **DEFENDANT**
*Commissioner of Social Security[1]*

**REPORT AND RECOMMENDATION**

Claimant Dawn H. appeals from the final determination of the Commissioner of Social Security denying her application for disability insurance benefits. (DN 1). Claimant filed a fact and law summary and brief. (DN 11, DN 12). The Commissioner responded in a fact and law summary. (DN 14). Claimant did not file a reply brief. The District Judge referred the case to the undersigned United States Magistrate Judge for consideration and preparation of a report and recommendation, as authorized in 28 U.S.C. § 636(b)(1)(B). (DN 10).

I. Findings of Fact

Dawn H. ("Claimant") applied for disability insurance benefits under Title II of the Social Security Act on May 31, 2019, alleging disability beginning on February 1, 2019. (Transcript, hereinafter "Tr." 208-09, 230). She alleged disability based on hypoglycemia, back problems, breast cancer, left breast removal, thyroid issue, right foot bunion, and migraines. (Tr. 234). Claimant's application was denied by the State Agency Disability Determination Service at both the initial and reconsideration levels. (Tr. 96, 106).

---

[1] Martin O'Malley became the Commissioner of Social Security on December 20, 2023. Pursuant to Federal Rule of Civil Procedure 25(d), Martin O'Malley is substituted for Kilolo Kijakazi as Defendant in this case.

At Claimant's request, Administrative Law Judge D. Lyndell Pickett ("ALJ Pickett") conducted a hearing in Louisville, Kentucky on July 22, 2020 and a supplemental hearing on November 4, 2020.[2] (Tr. 28-59). Claimant and an impartial vocational expert participated in the hearings. (*Id.*). On November 20, 2020, ALJ Pickett issued an unfavorable decision finding that Claimant was not disabled. (Tr. 12-27). Applying the five-step sequential evaluation process promulgated by the Commissioner, 20 C.F.R § 404.1520(a), ALJ Pickett determined that, while Claimant had the severe impairments of degenerative disc disease and degenerative joint disease of the left shoulder, she still retained the residual functional capacity (RFC) to perform light work as defined in 20 C.F.R. § 404.1567(b) but that she should not work at unprotected heights, although she could "perform occasional climbing of ramps, stairs, ladders, ropes, and scaffolds" and could "occasionally balance, stoop, kneel, crouch, and crawl . . . [and] reach overhead with the left non-dominant upper extremity." (Tr. 17-21). Under this RFC, ALJ Pickett found Claimant could perform her past relevant work as an electronics inspector. (Tr. 21-22).

The Appeals Council denied Claimant's request for review on August 19, 2021. (Tr. 1). Claimant appealed to this Court and the Court granted the Parties' joint motion to remand. (Tr. 1672-73). On July 26, 2022, the Appeals Council remanded Claimant's case back to ALJ Pickett for the resolution of three issues:

> (1) [F]urther consideration of medical source opinions and prior administrative medical findings including the findings of Dr. Farmer pursuant to . . . 20 C.F.R. § 404.1520(c);
>
> (2) [F]urther consideration to Claimant's maximum [RFC] and provide appropriate rationale with specific references to evidence of record in support of the assessed limitations (20 C.F.R. § 404.1545 and Social Security Ruling 96-8p);
>
> (3) If warranted by the expanded record, obtain supplemental evidence from a vocational expert to clarify the effect of the assessed limitations on the claimant's occupational base . . . . Further, before relying on the vocational expert evidence

---

[2] The hearings were held telephonically due to the Covid-19 pandemic with Claimant's consent. (Tr. 15).

> the Administrative Law Judge will identify and resolve any conflicts between the occupational evidence provided by the vocational expert and information in the Dictionary of Occupational Titles (DOT) and its companion publication, the Selected Characteristics of Occupations (Social Security Ruling 00-4p).

(Tr. 1682-87).

On December 28, 2022, ALJ Pickett convened a third administrative hearing in Louisville, Kentucky, as contemplated by the Appeals Council's remand order.[3] (Tr. 1648-1671). Claimant and a second vocational expert appeared and testified. (Tr. 1648-1671).

During the hearing, Claimant testified to the following. She previously worked part-time at a childcare center, part-time at a clothing store, and at an automotive center. (Tr. 1652-53). As an automotive inspector, Claimant stood for four hours of the eight-hour workday. (Tr. 1654). She lifted up to 50 pounds and used a hand jack to pull pallets that weighed over 100 pounds. (*Id.*). Claimant's hands "give out" if she lifts more than ten pounds. (Tr. 1655). Additionally, Claimant feels pulls on her mastectomy scars and experiences pain when she lifts more than ten pounds. (*Id.*). She has a limited range of motion in all directions and has weak hands, although she does not report difficulty with buttoning buttons or zipping zippers. (Tr. 1656). Claimant reports that she can only stand for 15 minutes at a time because her back and neck start to hurt. (*Id.*). Claimant experiences frequent migraines that last three days on average. (Tr. 1658). She experiences anxiety attacks when she drives to her doctor's appointments because driving triggers her vertigo. (Tr. 1660). Sometimes, the vertigo gets so bad that she pulls her car over. (Tr. 1660-61).

On February 20, 2023, ALJ Pickett issued an unfavorable decision, finding that Claimant was not disabled. (Tr. 1621-1647). Again applying the five-step sequential analysis from 20 C.F.R. § 404.1520(a), ALJ Pickett made the following findings. First, Claimant has not engaged in substantial gainful activity since February 1, 2019, her alleged onset date. (Tr. 1627). Second,

---

[3] This hearing was also held telephonically due to the Covid-19 pandemic with Claimant's consent. (Tr. 1624).

Claimant has the following severe impairments: cancer residuals, degenerative disc disease, and degenerative joint disease of the left shoulder. (Tr. 1627-29). Additionally, at step two, ALJ Pickett determined Claimant's depression and anxiety were not severe and that she only had mild limitations in "concentrating, persisting, or maintaining pace," one of the four functional areas known as the "paragraph B criteria." (Tr. 1628-29). Third, Claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Pt. 404, Subpt. P, App'x 1. (Tr. 1629). Fourth, Claimant has the RFC to perform "light work" with the following exceptions:

> [N]o work at unprotected heights; occasional climbing of ramps and stairs; no climbing of ladders, ropes, or scaffolds; occasionally balance, stoop, kneel, crouch or crawl, with balance as defined by the Selected Characteristics of Occupations (SCO); frequent reaching out in front and side-to-side with the left non-dominant arm; and occasional reaching overhead with the left, non-dominant arm.

(Tr. 1630). Additionally, at step four, ALJ Pickett found Claimant is capable of performing past relevant work as an admissions evaluator because such work was not precluded by her RFC. (Tr. 1638). Based on these findings, ALJ Pickett did not proceed to step five.

ALJ Pickett concluded Claimant was not under a disability, as defined in the Social Security Act, from February 1, 2019, through the date of this decision. (Tr. 1638). Claimant appealed ALJ Pickett's decision. (Tr. 327-329). On August 30, 2023, the Appeals Council declined review, finding Claimant's reasons for disagreement did not provide a basis for changing ALJ Pickett's decision. (Tr. 1613-1620). At that point, the denial became the final decision of the Commissioner, and Claimant appealed to this Court. (DN 1).

## II. Standard of Review

Administrative Law Judges make determinations as to social security disability by undertaking the five-step sequential evaluation process mandated by the regulations. *Vance v. Comm'r of Soc. Sec.*, 260 F. App'x 801, 803-4 (6th Cir. 2008) (citing *Abbott v. Sullivan*, 905 F. 2d

918, 923 (6th Cir. 1990)); 20 C.F.R. §§ 404.1520(b), 416.920(b). Throughout this process, the claimant bears the overall burden of establishing they are disabled; however, the Commissioner bears the burden of establishing the claimant can perform other work existing in significant numbers in the national economy. *Id*. at 804 (quoting *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 548 (6th Cir. 2004)).

When reviewing the Administrative Law Judge's decision to deny disability benefits, the Court may "not try the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citations omitted). Instead, the Court's review of the Administrative Law Judge's decision is limited to an inquiry as to whether the Administrative Law Judge's findings were supported by substantial evidence, 42 U.S.C. § 495(g); *Foster v. Halter*, 279 F.3d 348, 353 (6th Cir. 2001) (citations omitted), and whether the Administrative Law Judge employed the proper legal standards in reaching his conclusion. *See Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 213 (6th Cir. 1986). Substantial evidence exists "when a reasonable mind could support a decision as adequate to support the challenged conclusion, even if that evidence could support a decision the other way." *Cotton v. Sullivan*, 2 F.3d 692, 695 (6th Cir. 1993). The Supreme Court has clarified "whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high[.]" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citations omitted).

### III. Analysis

Claimant challenges ALJ Pickett's evaluation of her impairments throughout his opinion. First, Claimant asserts ALJ Pickett's finding that Claimant can perform past relevant work is based on legal error because ALJ Pickett failed to account for the mental limitations he found credible

5

in the RFC analysis. (DN 12, at PageID # 2964). Second, Claimant argues ALJ Pickett erred in evaluating the medical opinions and findings in his RFC determination. (*Id.*).

(1) ALJ Pickett's Evaluation of Claimant's Mental Limitations Generally in the RFC

Claimant asserts ALJ Pickett failed to properly evaluate her non-severe impairments of depression and anxiety in the RFC. A claimant's RFC is defined as the "maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs." 20 C.F.R. Pt. 40, Subpt. P, App. 2 § 200.00(c). An ALJ bases their RFC determination on "all of the relevant medical and other evidence" in the case record. 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3).

According to Claimant, ALJ Pickett should have considered Claimant's mild limitation in her ability to maintain concentration, persistence, and pace through the remainder of the disability evaluation process because an ALJ must account for all the functional limitations caused by a claimant's impairments when formulating the RFC finding, including those that are non-severe. (DN 11, at PageID # 2942 (citing 20 C.F.R. §§ 404.1523, 404.1545(a)(2); SSR 96-8p, 1996 WL 374184, at *5; SSR 85-15, 1985 WL 56857)). Claimant posits that an ALJ's RFC finding must include all the limitations the ALJ has found to be supported by the evidence of record, whether from severe impairments or non-severe impairments. (DN 11, at PageID # 2940). Claimant argues ALJ Pickett never affirmatively explained his reasons for including no mental functional limitations in the RFC finding despite the admitted presence of mild mental functional limitations. (DN 11, at PageID # 2954). Thus, Claimant submits remand is warranted for an ALJ to determine what impact Claimant's mental functional limitations have on her capacity to perform her prior work which was both highly skilled and required constant attention and prolonged focus. (DN 11, at PageID # 2954).

6

The Commissioner responds that, in forming Claimant's RFC, ALJ Pickett thoroughly and appropriately considered the effects of all the impairments, including those found to be non-severe. (DN 14, at PageID # 2972). The Commissioner contends Claimant is confusing the steps of the administrative process and that an ALJ is not automatically required to include limitations from their step two severity analysis into their subsequent step four RFC determination. (DN 14, at PageID # 2971-72). Citing cases from the Sixth Circuit and this Court, the Commissioner maintains ALJ Pickett was not required to specifically discuss each non-severe impairment in the RFC assessment to demonstrate that they were considered. (DN 14, at PageID # 2972 (citing *Emard v. Comm'r of Soc. Sec.*, 953 F.3d 844, 851-52 (6th Cir. 2020)); *Gardner v. Comm'r of Soc. Sec.*, No. 3:20-cv-524-CHB-CHL, 2022 WL 1134294 (W.D. Ky. Jan. 4, 2022), adopted 2022 WL 885854 (W.D. Ky. Mar. 25, 2022)).

An ALJ is not required to incorporate mild mental impairments into an RFC assessment. *See Smith v. Comm'r of Soc. Sec.*, 715 F. Supp. 3d 994, 999 (E.D. Mich. 2024); *Phillips v. Comm'r of Soc. Sec.*, No. 3:22-cv-01144, 2023 WL 4078204, at *6 (N.D. Ohio Apr. 4, 2023) ("[M]ild limitations do not automatically mandate specific limitations in the RFC."). Even so, district courts throughout the Sixth Circuit and beyond have found that an ALJ must still adequately explain how a claimant's mild mental impairments affect the RFC determination. *See Miller v. O'Malley*, No. 5:23-cv-209-HAI, 2024 WL 315685, at *7 (E.D. Ky. Jan. 26, 2024) ("In drafting the RFC, the ALJ is required to consider a claimant's non-severe mental health limitations but is not required to inevitably incorporate them in the RFC."); *Mark E. v. Kijakazi*, No. 20-cv-2047 (PAM/JFD), 2021 WL 6066260, at *9-10 (D. Minn. Aug. 14, 2021) ("a proper RFC analysis need not be identical to findings at step two, but the analysis must demonstrate that the entire record was considered in the formulation of the RFC, including mental limitations found to be non-severe") (citing *Gann v.*

*Colvin*, 92 F. Supp. 3d 857, 885 (N.D. Iowa 2015)); *Simon-Leveque v. Calvin*, 229 F.Supp.3d 778, 787 (N.D. Ill. 2017) ("the ALJ still must affirmatively *evaluate* the effect such mild limitations have on the claimant's RFC."); *Ceol v. Berryhill*, No. 3:25-cv-315-CCS, 2017 WL 1194472, at *10 (E.D. Tenn. Mar. 30, 2017) (finding error where ALJ "provided no discussion in the RFC portion of the decision as to whether the Plaintiff's mild limitations caused by the Plaintiff's anxiety produced work-related limitations.").

Claimant's case is distinguishable from many of the cases she cites where courts remanded based on an ALJ's failure to properly address mild limitations in mental functioning in the RFC. (DN 11, at PageID # 2947-52). This includes the only opinion Claimant cited which was authored by a court within the Sixth Circuit, where the court could not discern why the RFC omitted mental limitations because the ALJ did not in any way address the matter. (DN 11, at PageID # 2947-52 (citing *Richardson v. Saul*, 511 F. Supp. 3d 791, 799 (E.D. Ky. 2021))).

ALJ Pickett ended his step two analysis by clarifying the distinction between steps two and four of the sequential evaluation process:

> The limitations identified in the "paragraph B" criteria are not a [RFC] assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process. The mental [RFC] assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment. The following [RFC] assessment reflects the degree of limitation the undersigned has found in the "paragraph B" mental function analysis. [] The undersigned considered all of the claimant's medically determinable impairments, including those that are not severe, when assessing the claimant's [RFC].

(Tr. 1629). ALJ Pickett's clarification demonstrates that he considered Claimant's mild limitations in later assessing her RFC. What is more, ALJ Pickett begins his RFC analysis by stating he has "considered all symptoms," (Tr. 1630), and concludes the RFC by reiterating that he based his conclusion on the "entire record." (Tr. 1637). Beyond these general statements, ALJ Pickett considered the record evidence of Claimant's mental health impairments, or lack thereof, while

8

evaluating the allegations from Claimant and her husband that her impairments affect her ability to complete tasks. (Tr. 1630 (citing Tr. 288)). He cited to Claimant's function report stating that she participates in a variety of daily activities, spends time with others, and can follow written and spoken directions very well. (Tr. 1630-31 (citing Tr. 282, 285-288)). Additionally, the ALJ concluded that the "mental examinations in the record do not sustain the claimant's allegations of disabling limitations." (Tr. 1637).

Claimant argues that this case turns on whether she could perform skilled work with a high reasoning level, but she fails to show any error in ALJ Pickett's decision. Beyond citing to the opinions of Dr. Jackson and Dr. Johnson, which ALJ Pickett found unpersuasive, Claimant fails to point to specific record evidence that contradicts ALJ Pickett's conclusions. (DN 11, at PageID # 2944-47). The Court finds ALJ Pickett's RFC determination as to Claimant's mental impairments traces a clear path of reasoning and is supported by substantial evidence in the record.[4] Likewise, because ALJ Pickett's RFC is supported by substantial evidence on the record, he was not required to include any specific functional limitation correlating to his step-two finding that Claimant was mildly limited in her ability to maintain concentration, persistence, and pace.

(2) ALJ Pickett's Evaluation of Dr. Johnson and Dr. Jackson's Medical Opinions

Claimant believes ALJ Pickett failed to properly evaluate the opinion evidence of Dr. Johnson and Dr. Jackson and failed to create a logical bridge between the evidence and the rejection of the opinion evidence, frustrating meaningful review. (DN 11, at PageID # 2955-60).

---

[4] *See Smith*, 2024 WL 416374, at *3 (finding no error where ALJ specifically mentioned plaintiff's mental impairments in RFC analysis and stated his determination was based on the entire record and all of plaintiff's symptoms, mental and physical); *Wardlow v. Kijakazi*, No. 3:20-cv-00828-RSE, 2022 WL 1748607, at *6 (W.D. Ky. May 31, 2022) (finding analysis of mental impairments in RFC was supported by substantial evidence where final sentence of step-two analysis indicated ALJ considered "mild limitations" in paragraph B criteria in forming RFC determination).

As indicated in the last section, the RFC is the most a claimant can do despite their physical and mental limitations. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). Because an ALJ must base their RFC determination on "all of the relevant medical and other evidence" in the case record, the ALJ is required to evaluate the persuasiveness of the medical opinions in the record and assess the claimant's subjective allegations. 20 C.F.R. §§ 404.1520c, 404.1529(a).

In this case, the new regulations for evaluating medical opinion evidence apply because Claimant filed her applications after March 27, 2017. *See* C.F.R. § 404.1520c. The new regulations specify that an ALJ will not give any specific evidentiary weight to any medical opinion, even the opinions of a claimant's treating physician. *Id*. ALJs now evaluate the "persuasiveness" of medical opinions using five factors: (1) supportability; (2) consistency; (3) relationship to the claimant; (4) specialization; and (5) other factors. *Id* (c)(1)-(5). Of these factors, supportability and consistency are the most important. *Id*. (a), (b)(2). The regulations, accordingly, require ALJs to explain how they considered the supportability and consistency factors in their determination. *Id* (b)(2). Comparatively, ALJs "may, but are not required to, explain" their consideration of factors (3)-(5). *Id*.

In assessing a medical opinion's "supportability," "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . the more persuasive the medical opinions . . . will be." 20 C.F.R. § 404.1520c(c)(1). And the "consistency" factor denotes the extent to which the medical opinion "is consistent with the evidence from other medical sources and nonmedical sources in the claim[.]" *Id*. (c)(2). To further illuminate this distinction, "supportability" relates to the objective medical evidence and supporting explanation provided by a medical source to bolster their *own* opinion; by contrast, "consistency" relates to the relationship of a medical source's opinion to *other* medical

10

opinions and evidence of record. 20 C.F.R. § 416.920c(c)(1)-(2).

ALJ Pickett evaluated the opinions of medical expert Dr. Richard Jaslow; two state agency medical consultants; Dr. Thad Jackson, claimant's neurosurgeon; and Dr. Karen Johnson, the general surgeon who treated Claimant's breast cancer. (Tr. 1634-37). Claimant believes ALJ Pickett did not explain how he considered the supportability and consistency factors for Dr. Jackson or Dr. Johnson's opinions and failed to set out a sufficient analysis of the evidence to allow an appellate court to trace his path of his reasoning for concluding these opinions are unpersuasive. (DN 11, at PageID # 2955). Claimant further argues ALJ Pickett misstated the treatment that Claimant received and ignored findings and evidence to support Dr. Jackson and Dr. Johnson's assessments. (*Id*.). The Commissioner, on the other hand, argues that ALJ Pickett complied with the regulatory requirement to articulate how he considered the supportability and consistency factors when he found the opinions of Dr. Jackson and Dr. Johnson unpersuasive. (DN 14, at PageID # 2987).

### A. Dr. Jackson's Medical Opinions

ALJ Pickett evaluated the opinion of Dr. Jackson, who provided a December 2019 medical source statement concerning Claimant's physical work-related limitations and a subsequent November 2020 letter stating that he saw Claimant in September 2020 and that his opinion remained the same as his December 2019 medical source statement. (Tr. 1201-06, 1610).

ALJ Pickett noted several statements from Dr. Jackson's first assessment, including the following.

- Claimant's pain or other symptoms are severe enough to frequently interfere with attention and concentration needed to perform even simple work tasks.
- Claimant is capable of performing in low stress jobs.
- Claimant could sit for one hour at a time and stand for 30 minutes at one time.
- Claimant could sit for a total of two hours and stand and walk for a total of two hours in an eight-hour workday.

- Claimant needs to include periods of walking around during an eight-hour workday.
- Claimant must walk for five minutes every 60 minutes.
- Claimant needs a job that permits shifting positions at will from sitting, standing, or walking.
- Claimant sometimes needs to take unscheduled breaks during an eight-hour workday.
- Claimant would need to rest for five to 10 minutes every one to two hours.
- Claimant could lift and carry 10 pounds occasionally and less than 10 pounds frequently.
- Claimant could rarely look down, look up, and turn her head to the right or left.
- Claimant could frequently hold her head in a static position.
- Claimant could occasionally climb stairs, but could rarely twist, bend, stoop, crouch, and squat.
- Claimant could never climb ladders.
- Claimant could only use her left hand for grasping, turning, and twisting objects 20% of an eight-hour workday, and her left arm for reaching, including overhead for 10% of an eight-hour workday.

(Tr. 1635-36). ALJ Pickett found Dr. Jackson's December 2019 opinion unpersuasive because it is not supported by his own treatment notes and is inconsistent with the other medical evidence in the record. (Tr. 1636). As to the supportability factor, ALJ Pickett noted Dr. Jackson only treated Claimant "one time prior to giving this opinion" and his treatment notes "indicated that the claimant's cervical range of motion was within normal limits and that her back's paraspinal muscle strength and tone were within normal limits." (Tr. 1636 (citing Tr. 1201, 1606-07)). ALJ Pickett made additional observations about Dr. Jackson's treatment notes:

> While Dr. Jackson noted that the claimant's left shoulder had decreased range of motion with increased pain, he also noted that the claimant's left shoulder joint stability was normal. Dr. Jackson also reported that the claimant's strength, muscle tone, and bulk were normal in her bilateral upper extremities. Dr. Jackson also stated that the claimant was able to stand without difficulty and that she had a normal gait. Dr. Jackson also noted that the claimant's sensation was intact to light touch throughout her extremities.

(Tr. 1636). As to the consistency factor, ALJ Pickett observed that other medical evidence in the record "indicated that the claimant's neck had normal range of motion, her back was non-tender, her left shoulder improved after surgery, as she was neurovascularly intact and her shoulder had

normal strength, and that her gait and station were within normal limits." (Tr. 1636 (citing Tr. 1250-62, 1446, 1502, 1551-52, 1862-65, 2386-2493)).

Though Dr. Jackson's November 2020 letter was essentially the same as the December 2019 statement, ALJ Pickett still provided an explanation as to why he found it unpersuasive. (Tr. 1636). Regarding the supportability factor, ALJ Pickett observed that the November 2020 letter was not supported by Dr. Jackson's September 2020 treatment notes. (Tr. 1636).

> Specifically, [the September 2020 letter] noted that the claimant reported that her left arm had some aching pain but no numbness, and that her neck pain was worse than her arm pain. However, Dr. Jackson's physical examination finding[s] were normal. In fact, it was noted that she was in no acute distress.

(*Id*. (citing Tr. 1602-03)). Regarding the consistency factor, ALJ Pickett made observations that were identical to his consistency evaluation for the December 2019 statement. (Tr. 1636-37 (citing Tr. 1250-62, 1446, 1502, 1551-52, 1862-65, 2386-2493)).

Claimant argues that Dr. Jackson's opinions were supported by Dr. Jackson's January 2021 MRI of Claimant's cervical spine, which reflected "multilevel degenerative changes in C2-3, C3-4, C4-5, C5-6, and moderate central canal narrowing at C6-7." (DN 11, at PageID # 2959 (citing Tr. 1856)). The Commissioner notes that "Dr. [Jackson] did not rely on [the January 2021 MRI] evidence as support for either of his opinions, as the MRI results post-date both of his assessments"[5] and that ALJ Pickett considered this evidence when he evaluated the state agency physicians and the medical expert's testimony and prior administrative medical findings. (DN 14, at PageID # 2986 (citing Tr. 1201-1206, 1610, 1856)). Additionally, the Commissioner points out that ALJ Pickett supported his conclusion that Dr. Jackson's opinions were not supported by his own treatment notes by observing that Dr. Jackson had only treated Claimant once and that the

---

[5] The Court believes the Commissioner mistakenly wrote "Dr. Johnson" when it intended to write "Dr. Jackson" because the sentence cites to Dr. Jackson's opinions.

13

treatment notes included observations of normal functions. (DN 14, at PageID # 2984 (citing Tr. 1201, 1606-07, 1636)). The Court finds that, because ALJ Pickett's observations are supported by substantial evidence in the record, he properly evaluated Dr. Jackson's opinion evidence regarding the supportability factor.

Claimant believes ALJ Pickett should have evaluated the consistency of Dr. Jackson's opinions with Dr. Johnson's opinion and any other "medical opinion evidence of record." (DN 11, at PageID # 2960). Arguably, ALJ Pickett did. Though he did not explicitly state whether he found Dr. Jackson's opinions to be consistent with Dr. Johnson's opinion, he described the physicians' opined restrictions and found them both to be largely inconsistent with the record evidence. Further, ALJ Pickett explicitly stated that he found Dr. Jackson's opinions "inconsistent with other medical evidence in the record" and that he found Dr. Johnson's opinion "inconsistent with other treatment notes regarding the claimant's follow up treatment for cancer . . . ." (Tr. 1636-37 (citing Tr. 1176, 1250-63, 1437-1500, 1500-03, 1551-53, 1861-69, 2386-2493)). This analysis permits the Claimant to understand why ALJ Pickett did not find Dr. Jackson's opinion consistent with the record evidence.

Claimant notes that none of the medical sources which ALJ Pickett found persuasive reviewed Dr. Jackson's January 2021 MRI. (DN 11, at PageID # 2959 (citations omitted)). Citing to cases outside of the Sixth Circuit, Claimant argues that a physician's opinion based on an incomplete record cannot constitute substantial evidence to support an ALJ's decision. (DN 11, at PageID # 2959-60 (citing *Tonapetyan v. Halter*, 242 F.3d 1144, 1151 (9th Cir. 2001); *Jelinek v. Astrue*, 662 F.2d 805, 812 (7th Cir. 2011); *Morales v. Apfel*, 225 F.3d 310, 319-20 (3d Cir. 2000)). Claimant explains that the objective clinical diagnostic findings from the MRI demonstrate support for Dr. Jackson's assessment that Claimant "was limited to rarely turning her head right or left,

14

looking down and up, and was limited in the ability to use her hands, fingers, and arms to 20% of an 8-hour workday," which Claimant argues is "particularly remarkable in light of the vocational witness specific testimony that if 'limited to occasional reaching in all directions with the left, non-dominant upper extremity,' [Claimant] would be precluded from all of her past relevant work." (DN 11, at PageID # 2960 (citing Tr. 56, 1201-06)).

The Commissioner argues that Claimant failed to show any error in ALJ Pickett's evaluation because the January 2021 MRI results "merely corroborate[] the ALJ's step-two [severity analysis] finding and does [sic] not establish functional limitations such as difficulty turning the neck or limitations in extremity use." (DN 14, at PageID # 2986 (citing Tr. 1856, 1627, DN 11 at PageID # 2960)). Further, the MRI results post-date both the state agency physicians and the medical expert opinions. (DN 14, at PageID # 2986). Nevertheless, the Commissioner argues that ALJ Pickett "considered the [MRI] evidence in evaluating their testimony and prior administrative medical findings." (DN 14, at PageID # 2986 (citing DN 11, at PageID # 2959-60)). For one, ALJ Pickett explained that he found the state agency physicians' findings only partially persuasive because "they were not entirely consistent with the evidence in the record, and Plaintiff was further limited to light work based on the cervical MRI findings." (DN 14, at PageID # 2986 (citing Tr. 1636-35, 1856)). Additionally, ALJ Pickett found the medical expert's testimony persuasive because "it was consistent with the evidence of record, despite a cervical spine MRI revealing degenerative disc disease and treatment note indicating neck pain because Plaintiff's neck was consistently found to have normal range of motion." (*Id*. (citing Tr. 1634, 1502, 1552, 1856, 1858, 1862, 1865, 1869). Based on this evidence, the undersigned agrees with the Commissioner that ALJ Pickett considered the January 2021 MRI results that post-dated the state agency and medical expert review and, thus, no error resulted from Dr. Jackson not reviewing the

15

MRI.

(B) Dr. Johnson's Medical Opinions

ALJ Pickett evaluated the November 2019 opinion of Dr. Johnson, which was provided in the form of a statement and questionnaire concerning Claimant's cancer treatment. (Tr. 1199-1200). ALJ Pickett noted that:

> Dr. Johnson opined that the claimant had significant pain that might interfere with her ability to sustain concentration and pace in work-related situations. Dr. Johnson also stated that the claimant experienced pain, fatigue, tingling, numbness, or other symptoms sufficiently severe to interfere with her attention and concentration. Further, Dr. Johnson noted that the claimant is incapable of working in any capacity for eight hours per day, five days per week, 52 weeks per year on a sustained basis without interruption due to her medical conditions. Dr. Johnson also stated that the claimant would have to leave a workstation for restroom breaks every four hours. Finally, Dr. Johnson reported that the claimant would be absent from work more than three times per month due to her impairments or treatment. (Ex 13F/2).

(Tr. 1637). ALJ Pickett found the opinion unpersuasive. (*Id.*) As to the supportability factor, ALJ Pickett found that the opinion "is not supported by Dr. Johnson's own treatment notes." (*Id.*). ALJ Pickett elaborated that "Dr. Johnson noted that the claimant's pathology revealed no residual carcinoma following her mastectomy. Moreover, Dr. Johnson's notes have consistently indicated that the claimant was doing well status post-surgery except for having residual left arm pain." (Tr. 1637 (citing Tr. 1207-23). As to the consistency factor, ALJ Pickett found that the opinion is

> inconsistent with other treatment notes regarding the claimant's follow up treatment for cancer, as those notes indicated that the claimant did not have to have radiation or chemotherapy. Finally, treatment notes from December 2021 indicated that the claimant's mammogram from November 2020 was benign and that her current bloodwork revealed that the claimant's CBC and CMP were both normal. Accordingly, the undersigned finds this opinion unpersuasive.

(Tr. 1637 (citing Tr. 1176, 2111)).

Additionally, ALJ Pickett discussed an earlier statement from Dr. Johnson, given in August 2019, which noted that Claimant "could not return to her job and perform her normal duties." (Tr. 1637 (citing Tr. 1194)). ALJ Pickett found the statement conclusory and thus "neither inherently

16

valuable, nor persuasive" because it "does not provide an opinion in regard to the most the claimant could perform in an eight-hour workday." (*Id.*). As a result, ALJ Pickett did not evaluate the supportability and consistency factors. (DN 14, at PageID # 2980 (citing Tr. 1637, 20 C.F.R. § 404.1520b(c), (c)(3)). In accordance with 20 C.F.R. § 404.1520b(c), (c)(3), the Court agrees Dr. Johnson's August 2019 statement is a statement on issues reserved for the Commissioner and need not be evaluated for supportability or consistency.

Claimant argues that ALJ Pickett's analysis of Dr. Johnson's opinion "myopically focuse[d] exclusively on oncological findings," which revealed ALJ Pickett's "layperson[] understanding of the reality facing a cancer-survivor and the recovery outlook for a patient in such a situation." (DN 11, at PageID # 2956). The Commissioner points out that because Dr. Johnson treated Claimant for breast cancer, "her opinion focused exclusively on questions for a cancer patient." (DN 14, at PageID # 2980 (citing Tr. 1199-1200)). The Commissioner argues that ALJ Pickett "properly considered Dr. Johnson's treatment for Plaintiff's cancer, including mammogram and pathology findings and bloodwork results, in evaluating the doctor's opinions." (DN 11, at PageID # 2980 (citing 20 C.F.R. § 404.1520c(c)(1))). The Court agrees with the Commissioner and finds that ALJ Pickett properly evaluated the opinion evidence regarding the supportability factor and supported his observations with substantial evidence in the record.

Claimant notes that ALJ Pickett observed that Dr. Johnson's opinion "is inconsistent with other treatment notes regarding [C]laimant's follow up treatment for cancer, as those notes indicated that [C]laimant did not have to have radiation or chemotherapy." (DN 11, at PageID # 2956-57 (quoting Tr. 1637) (internal quotation marks omitted)). Claimant argues that this observation is inaccurate because the record "reveals that [Claimant] 'underwent lumpectomy and **also radiation therapy.**'" (DN 11, at PageID # 2957 (quoting Tr. 1419) (citing Tr. 442, 525, 1093,

17

1561) (emphasis added by Claimant)). Citing courts outside of the Sixth Circuit, Claimant argues that, because ALJ Pickett misrepresented the record and failed to properly evaluate the evidence supporting Dr. Johnson's opinion, a remand is warranted. (DN 11, at PageID # 2957 (citing *Sarchet v. Chater*, 78 F. 3d 305, 309 (7th Cir. 1996), *Allen v. Astrrue*, 721 F. Supp. 2d 769, 780-81 (N.D. Ill. 2010)).

The Commissioner argues that substantial evidence supports ALJ Pickett's conclusion that Claimant did not receive radiation treatment. (DN 14, at PageID # 2980-81 (citing Tr. 1637, 1176, 1179, 1183, 1185, 1187, 1189, 1192, 1299, 1304, 1306, 1308, 1317, 1323, 1334, 1347, 1358, 1367, 1376, 1207-08, 1209-10, 2111-12)). For example, ALJ Pickett indicated that, in May 2019, Claimant reported to another doctor "that she had lumpectomies in February and March 2019, with a mastectomy in April 2019, but no radiation or chemotherapy treatment." (DN 14, at PageID # 2980-81 (citing Tr. 1637, Tr. 1176). Additionally, in April 2019, "Dr. Sellitit stated in her medical report 'I explained she did not need adjuvant radiation.'" (DN 14, at PageID # 2981 (citing Tr. 565)). Further, Claimant's physical therapy notes included "the assertion that she did not receive radiation or chemotherapy treatment." (*Id*. (citing Tr. 1179, 1183, 1185, 1187, 1189, 1192, 1299, 1304, 1306, 1308, 1317, 1323, 1334, 1347, 1358, 1367, 1376). What is more, the July and August 2019 follow-up treatment notes make no mention of radiation treatment. (DN 14, at PageID # 2981 (citing Tr. 2111-12)). Claimant does not reference "any actual medical record of her purported radiation treatment," but instead cites "records that show a radiation consultation note and recommendation for radiation, and her reports to providers at follow-up appointments for hypoglycemia that she had radiation treatment" (DN 14, at PageID # 2981 (citing Tr. 525, 529, 1093, 442, 1419, 1561)). Claimant alleges that, because ALJ Pickett did not recognize that Claimant had radiation treatment, ALJ Pickett failed to recognize the severity of other effects of

18

her cancer treatment, including osteoporosis and bone health problems, memory issues, emotional distress and depression, nerve damage, neuropathy, and numbness (DN 11, at Page ID # 2957). But this argument is based on generalized information about the potential effects from cancer treatment. The ALJ is tasked with making an individualized determination about a claimant's RFC. 20 C.F.R. § 404.1545(a). Substantial evidence in the record supports ALJ Pickett's conclusion that, while Claimant's treatment plan shows that radiation treatment was recommended, Claimant did not receive radiation treatment. Thus, ALJ Pickett did not err in stating that Claimant did not receive radiation treatment.

The Court finds that ALJ Pickett properly considered the supportability and consistency of Dr. Jackson's and Dr. Johnson's opinions by comparing their opined restrictions to their own treatment notes and the record evidence, including the opinions of the medical expert and the State agency medical consultants. While reasonable minds may differ, the Court cannot reweigh the evidence and substitute its own judgment for that of ALJ Pickett. *See Price v. Comm'r of Soc. Sec.*, 342 Fed. App'x 172, 174 (6th Cir. 2009); *Cotton*, 2 F.3d at 695 (Substantial evidence exists "when a reasonable mind could support a decision as adequate to support the challenged conclusion, even if that evidence could support a decision the other way."). For these reasons, the Court finds ALJ Pickett properly weighed Dr. Jackson and Dr. Johnson's medical opinions and complied with the applicable regulations.

IV. Recommendation

ALJ Pickett's decision is supported by substantial evidence in the record and comports with the applicable regulations; accordingly, the Court **RECOMMENDS** the Commissioner's decision be **AFFIRMED**.

NOTICE

Therefore, under the provisions of 28 U.S.C. §§ 636(b)(1)(B) and (C) and Fed. R. Civ. P. 72(b), the Magistrate Judge files these findings and recommendations with the Court and a copy shall forthwith be electronically transmitted or mailed to all parties. Within fourteen (14) days after being served with a copy, any party may serve and file written objections to such findings and recommendations as provided by the Court. If a party has objections, such objections must be timely filed or further appeal is waived. *Thomas v. Arn*, 728 F.2d 813 (6th Cir.), *aff'd*, 474 U.S. 140 (1984).

Copies:    Counsel of Record